PEOPLE v. STANLEY et al.

(Supreme Court, Appellate Division, First Department. January 8, 1909.)

1. BURGLARY (§ 41*)—EVIDENCE—SUFFICIENCY.
   In a prosecution for burglary committed in a gypsy camp, in which defendant interposed an alibi, evidence held to sustain a conviction.
   [Ed. Note.—For other cases, see Burglary, Cent. Dig. §§ 94, 103, 109; Dec. Dig. § 41.*]

2. CRIMINAL LAW (§ 742*)—APPEAL—QUESTIONS OF FACT—CREDIBILITY OF WITNESS.
   The credibility of witnesses in a criminal prosecution is for the jury.
   [Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 742.*]

3. CRIMINAL LAW (§ 1159*)—APPEAL—REVIEW—QUESTIONS OF FACT.
   Where there is sufficient evidence to sustain a verdict in a criminal prosecution, it will not be disturbed on appeal.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3074–3083; Dec. Dig. § 1159.*]

4. WITNESSES (§ 79*)—TRIAL—RECEPTION OF EVIDENCE—INFANT WITNESSES —DETERMINATION OF QUALIFICATION.
   Under Code Cr. Proc. § 392, providing that, whenever a child under the age of 12 years offered as a witness does not understand the nature of an oath, the evidence of such child may be received, if in the opinion of the court such child is possessed of sufficient intelligence to justify the reception of the evidence, it is not error to refuse to permit counsel to examine the child as to his exact age, after the court has examined the child and found him capable of testifying without oath.
   [Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 79.*]

Appeal from Court of General Sessions, New York County.

Richard Stanley and others were convicted of burglary in the second degree, and they appeal. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Abraham Levy (Harry C. Goldsmith, on the brief), for appellants. William Travers Jerome, Dist. Atty. (Robert S. Johnstone, of counsel), for the People.

CLARKE, J. On the 26th of December, 1907, a band of gypsies, the "Dora Pearce camp," called "Russian gypsies," although born in Mexico and speaking Italian, were encamped on the Boston Post road in the borough of the Bronx. Two or three squares away another tribe, known as the "Stanley camp," were located, and a short distance from them was a third camp, known as the "George camp." There were four tents in the Pearce camp. The tent of Dora, the head of the camp, consisted of two rooms; the inner room being used for sleeping purposes. It was in evidence that on the 26th of December Dora Pearce was sitting in the second room of her tent counting the treasure of her camp, which amounted to upwards of $13,000 in coins of various nationalities, some American paper money, three large cups of silver, one of gold, and a heavy silver chain. This treasure was kept in a large bag having two compartments and was usually deposited under the mattress in Dora Pearce's tent with some one on guard. While so engaged, so-called "old man Stanley," the had of the Stanley camp, and his son, Stephen, suddenly appeared in the tent and saw the treasure.

Dora Pearce testified: That old man Stanley tendered his daughter in marriage with her son Thomas, whose business it was to watch this money. That she said: "I am ready. I will go over and get your daughter." And that Stanley replied: "No, don't come over until 6'clock." It was further in evidence that thereafter Levi Stanley, for the first time during the acquaintance which had existed between the two camps, which had been located near each other upon the Boston Post road for three or four months, took Dora's son Thomas to the theater; that one of the boys was invited by Budd Stanley, one of the defendants, at about 6 o'clock, to go away from the Pearce camp to play cards; and that Dora Pearce, her husband, and John Tanniss, upon the invitation of Stanley to talk over the proposed marriage, went down to the Stanley camp, leaving in the Pearce camp, in addition to two infants, only Pipa Nilieva, a girl of 23, and Peter Marion, a boy of 8. Pipa was called by a strange woman into an adjoining tent to tell her fortune. Peter having stepped momentarily out of the main tent, on going back therein saw a slit cut in the back of the tent, and the defendant Richard Stanley in the tent, and Mitchell Stanley on the outside. That he saw Dick take the money bag with both hands and pass it through the cut, to Mitchell, and both of them run away with it. That he ran to Pipa, shouting, "The money they steal." Pipa testified that hearing Peter call she ran out and saw Dick and Mitchell holding the bag and running away with it, and that Maloney and Budd Stanley were looking at the others, and that as she ran up all four of them ran off into the woods, and that she then ran down to the Stanley camp and gave the alarm.

Each of the four defendants set up a separate alibi by way of defense. In addition to the direct evidence heretofore alluded to, there·

was other evidence tending to show admissions and an offer of restitution provided prosecution was dropped. We have carefully examined this entire record and are satisfied that questions of fact were presented which were solely for the determination of the jury. While a number of witnesses were sworn in support of the defenses of alibi, there were such contradictions and such improbabilities disclosed as to warrant the jury in rejecting the defense and in finding the defendants guilty beyond a reasonable doubt. The credibility of the various witnesses and whether or no their evidence fairly eliminated the possibility of an opportunity for the commission of the crime at the particular time when it occurred was clearly for the jury. There being sufficient evidence to sustain the verdict, there is no ground for interfering therewith as against the weight thereof.

There were no exceptions to the charge of the learned court. Indeed, at the close thereof counsel for the defendants said: "We regard your honor's charge as absolutely fair and impartial." Appellants now urge that the trial judge committed error in not permitting the boy Peter to be examined as to his competency to give sworn testimony, but the record is as follows:

"The court examined the witness, and determined that he might be sworn, and he was sworn. Counsel for the defendants: 'May it please the court, may I inquire as to his exact age so as to qualify him? Assistant District Attorney: He says he is eight years old, and the court has held that he may be sworn, and you are too late. Counsel for the Defendants: And I desire to formally object on the ground that he isn't qualified as to his age. The Court: He has stated his age. Assistant District Attorney: And his mother has stated his age. The Court: And he has given testimony in answer to the court's questions that satisfies the court that he is of that age and that he has intelligence and knowledge of the nature of an oath sufficient to be sworn. Counsel for the defendants: And I except, sir."

It will be seen that all that counsel for the defendants asked was to examine as to his age. The boy's age was immaterial provided that the court was satisfied that he was of the age and had the intelligence and the knowledge of the nature of an oath sufficient to be sworn. Section 392 of the Code of Criminal Procedure provides as follows:

"Whenever in any criminal proceedings a child actually or apparently under the age of twelve years offered as a witness does not in the opinion of the court or magistrate understand the nature of an oath, the evidence of such child may be received though not given under oath if, in the opinion of the court or magistrate such child is possessed of sufficient intelligence to justify the reception of the evidence. But no person shall be held or convicted of an offense upon such testimony unsupported by other evidence."

The evidence of Peter Marion was not taken as a statement not under oath, nor were the defendants convicted upon such testimony unsupported by other evidence. He was duly sworn upon the preliminary determination of the court, upon its examination as provided by the statute, that he had the capacity, knowledge, and intelligence sufficient to warrant his being sworn. As said in People v. Johnson, 185 N. Y. 219, 77 N. E. 1164:

"The preliminary examination by the presiding justice as to the competency of a witness of tender years is not evidence in the action. It is not addressed to any issue, and is for the consideration of the court only, not

of the jury. It is usually an informal conversation upon indifferent subjects, designed to put the child at ease so that he will talk naturally. His intelligence and ability to tell the truth are tested by noting his answers and his general appearance."

The court having made this examination, and having satisfied himself in the requisite particulars, no error is disclosed in that regard.

We have examined all the questions raised and conclude that the defendants had a fair and impartial trial, that no errors were committed to their prejudice, and that the judgment appealed from should be affirmed. All concur.